[No. 10,593.—In Bank.]

## PEOPLE v. MICHAEL FLAHAVE.

INSTRUCTION—SELF-DEFENSE—CRIMINAL LAW.—It is error to instruct the jury in a trial for murder that in order to justify a person in killing another in self-defense, it must appear that the danger was so urgent and pressing that in order to save his own life, or to prevent his receiving great bodily harm, the killing of the deceased was absolutely necessary.

ID. — ID. — ID. — McKinstry, J., concurring, was of the opinion that it is erroneous to instruct a jury to the effect that a homicide can never be justified on the ground of self-defense unless the person killed was the original assailant.

ID.—CRIMINAL PRACTICE.—McKinstry, J., concurring, was of the opinion, that papers purporting to be instructions inserted by the clerk in the record in a criminal case, can not be considered unless authenticated by the indorsement of the Court.

AFTER the decision a petition for rehearing was filed and denied.

Appeal from a judgment of conviction and an order denying a new trial in the Superior Court of Colusa County. HATCH, J.

*Jackson Hatch,* for Appellant.

*A. L. Hart,* Attorney-General, for Respondent.

SHARPSTEIN, J.:

Conceding that the last clause of the quotation which we treated in our former opinion as a copy of one of the instructions of the Court is not a true copy of the instruction as given by the Court, although literally copied from the bill of exceptions, the question arises whether the first clause, which is correctly copied from that instruction, is erroneous.

The Penal Code which was in force at the time of the al-

leged, commission of the homicide by the defendant, and which has ever since been in force, declares that homicide is justifiable "when committed in the lawful defense" of the person committing it, "when there is reasonable ground to apprehend a design to commit felony or to do some great bodily injury, and imminent danger of such design being accomplished." (Penal Code, § 197, subd. 3.)

The first clause of the instruction reads as follows:

"To justify a person in killing another in self-defense, it must appear that the danger was so urgent and pressing that in order to save his own life or to prevent his receiving great bodily harm, the killing of the deceased was absolutely necessary."

The variance between this and the language of the code is apparent. But if not material, it must be disregarded. This instruction is clearly based upon the theory that it was necessary for the defendant to establish on his trial not only that there was reasonable ground to apprehend a design on the part of the deceased to kill the defendant, or to do him some great bodily injury, and imminent danger of such design being accomplished, but also that it was absolutely necessary to kill the deceased in order to prevent the accomplishment of that design.

The law specifies two concurrent conditions upon which homicide is justifiable, in self-defense. To those two the Court added a third. To constitute a justification the law required that the defendant, before committing the homicide, must determine, at his peril, two things: 1. That the deceased intended to kill him, the defendant, or to do him some great bodily injury; 2. That there was imminent danger of such design being accomplished. As given by the Court, the law required that the defendant must, in addition to the two things above specified, determine at his peril, that it was *absolutely necessary* to kill the deceased in order to save his (defendant's) life or to prevent his receiving great bodily harm.

The design of the deceased to kill the defendant, or to do him some great bodily injury, might have been apparent, and there might have been imminent danger of that design being accomplished, and yet the defendant might have saved his

own life and prevented any great bodily injury being inflicted upon himself by some other means than homicide. But the law did not require him, under such circumstances, to exhaust all other, or even to resort to any other means, before taking life. Therefore, it was error to instruct the jury that the defendant was not justified in killing the deceased, unless it was absolutely necessary to kill him in order to prevent him from killing the defendant, or doing him some great bodily harm. The circumstance of the existence or non-existence of an apparent absolute necessity of taking the life of the deceased in order to prevent him from taking the life of the defendant or doing him some great bodily injury, would be entitled to great weight in determining whether there was reasonable ground to apprehend such a design and imminent danger of its being accomplished. In determining whether the circumstances were sufficient to excite the fears of a reasonable person, and whether the defendant acted under the influence of those fears alone, the apparent necessity of taking life, or the absence of such apparent necessity, in order to save his own or to prevent his receiving great bodily injury, should have been carefully considered by the jury. But it was not necessary for the jury to find that the killing of the deceased was absolutely necessary to prevent him from killing the defendant or doing him some great bodily injury, in order to acquit the defendant of the charge of murder.

Another instruction to which our attention was particularly directed on the argument reads as follows :

" The killing being proved, the burden of proving circumstances of mitigation, or that justify or excuse the homicide, will devolve on the accused, unless the proof on the part of the prosecution *sufficiently manifests* that the crime committed only amounts to manslaughter, or that the accused was justified or excused in committing the homicide.

In this case the defendant introduced no evidence on his own behalf, but seems to have relied upon the insufficiency of that of the prosecution, to justify his conviction. The variance complained of between the instruction and § 1105, Penal Code, consists of the substitution in the charge of the words " sufficiently manifests" for the words " tends to show" in the code.

We do not think that the variance between the language of the instruction and the words employed in the section of the Penal Code of sufficient importance to call for a reversal of the judgment on that ground.

But for the error first discussed in this opinion, the judgment and the order denying the motion of the defendant for a new trial must be reversed.

Judgment and order reversed.

THORNTON, J., MYRICK, J., and McKEE, J., concurred.


ROSS, J., concurring:

I concur in the judgment.


McKINSTRY, J., concurring:

I concur in the judgment. By § 1127 of the Penal Code, it is provided: "In charging the jury, the Court must state to them all matters of law necessary for their information. Either party may present to the Court any written charge and request that it be given. If the Court thinks it correct and pertinent, it must be given; if not, it must be refused. Upon each charge presented and given or refused, the Court must indorse and sign its decision. If part be given and part refused, the Court must distinguish, showing by the indorsement what part of the charge was given and what part refused."

And by § 1207 of the same code: "When judgment upon a conviction is rendered, the clerk must enter the same in the minutes, stating briefly the offense for which the conviction was had, and the fact of a prior conviction (if one), and must, within five days, annex together and file the following papers, which will constitute a record of the action: 1. The indictment and a copy of the minutes of the plea or demurrer; 2. A copy of the minutes of the trial; 3. The charges given or refused, and the indorsements thereon; and 4. A copy of the judgment."

The section last cited requires that the charges "given or

refused," which are inserted on the "record," or roll, shall be identified and authenticated by the "indorsements" of the Court.

By § 438 of the former Criminal Practice Act, it was provided that "when any written charge has been presented and given, or refused, the question or questions presented in such charge need not be excepted to, nor embodied in a bill of exceptions, but the written charge itself, with the *indorsement* showing the action of the Court, shall form part of the record," etc.

Section 462 of the same act, which prescribed the constituent parts of the record of the action, required that it should contain, amongst other things, "the written charges asked of the Court if there be any." In *People* v. *Hart*, 44 Cal. 598, it was said: "It is evident that both of these provisions refer to the written charges or instructions which either party may present and request to be given, and not the charge which the Court may give upon its own motion." "The charge given by the Court of its own motion forms no part of the judgment roll."

The clerk of the Superior Court is not authorized to insert in the "record" any paper purporting to set forth instructions, whether headed "Instructions for the Prosecution"—or "for Defendant"—or not, unless such instructions are shown by the Court's indorsements to have been given or refused, in whole or in part. In no other way can that officer be made acquainted with the action of the Court with respect to the instructions as presented by counsel. Indeed, in the case before us, there is nothing to show that any of the alleged instructions were presented during the trial. The clerk's certificate is that the transcript contains "full, true, and correct copies of  *  *  *  instructions and indorsements thereon as the same appears of record and on file in my office," etc. No *indorsements* appear in the transcript of the record, and there is no presumption that the charges found in such transcript were either given or refused. It is sufficiently manifest that we can not look to the "record of the action" to ascertain whether the Court below erred in charging the jury.

It appears from the bill of exceptions that the Court gave the jury the following instruction: "To justify a person in

killing another in self-defense it must appear that the danger was so urgent and pressing that in order to save his own life, or to prevent his receiving great bodily harm, the killing of the deceased was absolutely necessary, and it must appear also that the person killed was the assailant, *and* that the slayer had really and in good faith endeavored to decline any further struggle before the mortal blow was given."

The jury were thus told that a homicide can never be justified unless the person killed was the original assailant.

This charge is so clearly erroneous that comment upon it is unnecessary.