State vs. Wilson.

## No. 222.

### THE STATE OF LOUISIANA VS. ELBERT WILSON.

It is not misconduct on the part of a jury to procure and read law-books *after* they have con-
cluded their deliberations, and decided upon their verdict, although it has not been form-
ally *rendered* in open court.

Because inartificial expressions and words are employed in framing a verdict by the jury,
the same will not be annulled and set aside, if same are sufficient in terms to reasonably
convey the idea intended.

The rule *idem sonans* is applicable.

APPEAL from the Third District Court, Parish of Lincoln.
*Barksdale,* J.

---

*J. Henry Shepherd,* District Attorney, for the State, Appellee:

1. There is no law requiring verdicts to be in writing.  8 R., 31 Ann. 96; 32 Ann. 854; 33
Ann. 1414.
2. The law does not require jurors to be philologists. All that law requires is their ability
to appreciate the facts and to apply the law. When they have done that and expressed
their sense in an intelligible and unequivocable form the law is satisfied.  31 Ann. 96;
32 Ann. 854; 33 Ann. 855.
3. A written verdict badly spelled, which would otherwise leave its true meaning in doubt,
has all its doubts removed, and is controlled by the language used by the clerk when
reading the said verdict in the presence of the jury, and is conclusive of what the true
verdict is, and that it is in accordance with, and fully supports, the sentence.  32 Ann.
854; 33 Ann. 1414,
4. A verdict will not be set aside because there are law-books in the room in which the jury
retired to deliberate, where there is no proof that the books were read and examined by
the jury.  State vs. Farmer, 38 Ann. 309; 23 Ann. 678.
5. It is not essential to embody in the verdict the name of the accused or to insert the of-
fense charged.  State vs. Tanek, 30 Ann. 832; 31 Ann. 717; 34 Ann. 370.

*E. E. Kidd,* for Defendant and Appellant.

---

The opinion of the Court was delivered by

WATKINS, J.  The indictment charges that the defendant did "fel-
oniously and of his malice aforethought, with a dangerous weapon, to
wit, a pistol, shoot J. W. Davis, with intent to kill and murder him.'

Having been tried, convicted and sentenced to imprisonment in the
penitentiary, he has appealed, and rests his claim to relief on two
bills of exception, a motion in arrest of judgment, and an assignment
of error in this Court.

### I.

After conviction the accused claimed a new trial on the ground that
the jury had been guilty of misconduct, to his prejudice, in this, viz :
that "during their deliberations upon their verdict" they obtained and
examined a law-book and consulted the same with reference to the

case, and that this misconduct on their part vitiates the verdict. Annexed to the defendant's bill, and brought up with it, is the testimony of the deputy sheriff, who states that the jury had a law-book in their hands prior to bringing in their verdict, but he did not know whether they examined it or not.

He further states that this was *subsequent* to their having been charged by the court, and, also, *subsequent* to the time when they had informed him that they had found a verdict, and requested him to inform the court.

If the jury had already *concluded* their deliberations and decided upon the verdict they were to render to the court, their examination of a law-book *subsequently* did not in any manner affect, or impair it, and it was not misconduct on their part, and the rights of the accused were not prejudiced. 35 Ann. 970, 96.

## II.

The motion for a new trial having been overruled, the defend sought to arrest the judgment on the ground that the verdict—which was reduced to writing—is null and void, because it is vague, uncertain and illegal in form; not in accordance with the written instructions of the court; and not responsive to the charge in the indictment, or "any charge of crime known to the law," and it cannot, therefore, be enforced.

The indictment is brought up in the original, and thereupon is indorsed the verdict of the jury, which is, *ipsissimis verbis*, viz:

"We, the jury, find the accused guilty with and assault by sut-inge with intent to murder.            L. E. RICHARDS, Foreman."

There is special complaint made of the phraseology as being vague and uncertain, and our attention has been directed to the words "with and assault," and "sutinge," as illustrative.

It is clear to our minds that the idea the jury intended to convey by the former was, that they found the prisoner guilty of *an assault* with intent to murder, and only clothed that idea with inartificial verbiage.

Among the different forms of verdict which the judge directed the jury they might render, is the one following, to wit: "We, the jury, find the prisoner guilty of an assault with intent to murder."

The latter word "sutinge" is undoubtedly a *lapsus pennæ*, and the result of accident, or inadvertence, and was intended to have been written *shooting*. It appears from a bill of exceptions reserved by the district attorney that, when the verdict was first returned into court and read, he discovered there was some ambiguity, or uncertainty in its language, and requested the court to direct the jury to retire and bring in a

Caldwell vs. Railroad Company.

plain and responsive verdict. This request was declined by the judge, who assigned the following reasons for so doing, viz: "The court considered the verdict responsive and intelligible. When reading the verdict the clerk hesitated at the word in the verdict spelled *"sutinge,"* and the foreman of the jury at once prompted by stating that the word was *"shooting."* On motion of defendant's counsel, the jury was polled, and the clerk read the verdict, distinctly, pronouncing said word "shooting."

"The prompting by the foreman was before the district attorney made the motion to have the verdict corrected; and considering that word as being intended and written for shooting, the court considered the verdict as being intelligible and fully sufficient to be the basis of sentence."

The judge declined to set aside the verdict at the request of the defendant, and to this ruling he reserved a bill, and thereto the judge appended a statement, in which he assigned like reasons, and some additional ones, viz: that many words beginning with the letters "s" and "u" are pronounced as though spelled "shu" or "shoo," and hence the rule *idem sonans* applied. He further assigned that " if what followed the word "guilty" is not intelligible it is to be rejected as surplusage."

In our minds there is no doubt of the fact that the jury intended the word "sutinge" for "shooting," and such being the case, their verdict is responsive to the indictment, and to the charge of the court, and the judge correctly declined to set the same aside. *Vide*, State vs. Scott Ross, 32 Ann., 854, with which the instant case is almost identical.

Judgment affirmed.