[Criminal No. 143.   Filed March 28, 1900.]
[60 Pac. 697.]

HENRY WILSON, Defendant and Appellant, v. TERRITORY OF ARIZONA, Plaintiff and Respondent.

1. CRIMINAL LAW—MURDER IN SECOND DEGREE—VERDICT—DEGREE MISSPELLED "DECREE"—DOES NOT VITIATE VERDICT—DOCTRINE IDEM SONANS APPLICABLE.—A verdict finding the defendant "guilty of murder in the second decree" is not void because it finds the appellant guilty of no offense known to the statute, as the words "decree" and "degree" are pronounced so nearly alike as to make the doctrine of *idem sonans* applicable, and the spelling does not render it uncertain.

2. SAME—SELF-DEFENSE—INSTRUCTION TO JURY—HARMLESS ERROR—NOT GROUND FOR REVERSAL.—While an instruction that "To justify the killing of another in self-defense, it must appear that the danger was so urgent and pressing that in order to save his own life, or to prevent his receiving great bodily harm, the killing of the other was absolutely necesary," may be erroneous, such error is harmless, and no ground for reversal when a later statement to the jury that "It is your duty to look to the transaction from what you believe from the evidence was the standpoint of the defendant at the time, and consider the same in the light of the facts and circumstances as you believe they appeared to the defendant at the time, and not from any other standpoint."

APPEAL from a judgment of the District Court of the Third Judicial District in and for the County of Maricopa. Webster Street, Judge. Affirmed.

The facts are stated in the opinion.

Joseph Campbell, for Appellant.

There is no such crime as murder in the "second *decree.*" Act No. 17, 19th Leg. Assem. 1897.

It devolved upon the jury to find the degree of murder in their verdict. *People* v. *Campbell,* 40 Cal. 129; *People* v. *Jefferson,* 52 Cal. 452; *People* v. *Travers,* 73 Cal. 580, 15 Pac. 293; *People* v. *O'Neal,* 78 Cal. 288, 20 Pac. 705.

The verdict must be taken as it is written, and it is not competent to explain by evidence what the jury intended.

Where the defendant was found guilty of murder in the "fist degree," the court held the verdict void. *Woolridge* v. *State,* 13 Tex. Crim. App. 443.

The case at bar is as strong as the case just cited. It cannot be said that the jury intended to find the defendant guilty of murder in the "second degree" any more than the verdict above cited could be explained to mean murder in the "first degree." A verdict sentencing defendant "at two years in the state penty" was held void. *Keller* v. *State,* 4 Tex. Crim. App. 527. So was a verdict finding defendant "guity." *Taylor* v. *State,* 5 Tex. Crim. App. 570; *Wilson* v. *State,* 12 Tex. Crim. App. 485; *Harwell* v. *State,* 22 Tex. Crim. App. 255.

So also was a verdict finding a defendant guilty of "buggellary" instead of "burglary." *Haney* v. *State,* 2 Tex. Crim. App. 504.

The doctrine of *idem sonans* was not held to apply to either of these cases.

It is not the province of the court to ascertain and specify the offense of which the defendant is guilty. *People* v. *Ah Gow,* 53 Cal. 628.

An indictment charging a person with entering a stable with intent to commit "lacey" describes no offense. *People* v. *St. Clair,* 55 Cal. 524.

Where an indictment concluded "against the peace and dignity of the state of W. Virginia," instead of "West Virginia," the indictment was held void. *Lemons* v. *State,* 4 W. Va. 755, 6 Am. Rep. 293.

C. F. Ainsworth, Attorney-General, for Respondent.

"Degree" and "decree" are pronounced so nearly alike that it would require a practiced and careful ear to dis-

tinguish between them. This is the test of the application of the doctrine of *idem sonans*. *Gaham* v. *People*, 58 Ill. 160. The court said: "In the indictment the name is spelled 'Mary Danner,' while on the trial she testified it was spelled 'Dannaher.' . . . Notwithstanding this difference in orthography, it is not apparent, that, without care and effort, a large majority would not pronounce them alike, or so nearly so that it would require a practiced ear to distinguish them." Held sufficient indictment.

In *Krebs* v. *State*, 3 Tex. App. 349, the verdict, which was upheld, read: "We the juror find the defendant guilty, and *sess* his punishment *deth.*"

In *Hoy* v. *State*, 11 Tex. App. 32, the jury assessed the defendant's punishment at "two years in the state *penitenilery.*" The court held the verdict good, saying: "Misspelling does not vitiate a verdict, when no doubt can be entertained as to the words intended, or as to their meaning."

In *McCoy* v. *State*, 7 Tex. App. 379, the verdict assessed the punishment "*a* five years in the state *prisin.*" Held sufficient.

"*Gilty* of *mrder* in the first degree" held valid in *Walker* v. *State*, 13 Tex. App. 618.

In *Witten* v. *State*, 4 Tex. App. 70, a motion to quash an indictment because the name of the month mentioned in the indictment was written "Tebruary," was held to have been properly overruled.

In *Koontz* v. *State*, 41 Tex. 570, the verdict held good read: "We the jury find the defendant *gilty* as charged in the indictment, and assess his punishment at confinement in the state penitentiary for a *turm* of *too* years."

In *McMillan* v. *State*, 7 Tex. App. 100, the verdict upheld read: "We the jury, find the defend*end* guilty, and assess his punishment at five years *confindendment* in the penitenti*atry.*"

DAVIS, J.—The appellant, Henry Wilson, was tried at the May term, 1899, of the district court of Maricopa County, upon an indictment charging him with the crime of murder. The jury returned its verdict in the following form: "We, the jury, duly empaneled and sworn in the above entitled action, upon our oaths do find the defendant, Henry Wilson, guilty of murder in the second *decree*, and recommend him

to the mercy of the *cort.* F. W. BUTLER, Foreman." A motion for a new trial in the case was duly made and overruled, and the court pronounced judgment, sentencing the defendant to a term of fifteen years' imprisonment in the territorial prison. The defendant appeals from the judgment, and assigns two specific grounds of error upon which he relies for reversal.

It is first claimed that the verdict is void because it finds the appellant guilty of no offense known to the statutes,— "murder in the second *decree.*" Our statute now distinguishes murder into two degrees, and the determination of the degree is a matter for the jury, under the court's instructions upon the law. In this case the degrees of the crime were clearly and accurately defined by the learned judge who presided at the trial, and the jury was fully instructed in regard to the rules of distinction between them. That there can be any doubt as to what was intended by the verdict does not seem to us even remotely possible. Bad spelling will not vitiate a verdict, where it has the requisites of being certain and intelligible. *Snyder* v. *United States,* 112 U. S. 216, 5 Sup. Ct. 118, 28 L. Ed. 697; *Koontz* v. *State,* 41 Tex. 570. But another principle is decisive of the question sought to be raised in the case before us. Words which may be sounded practically alike without doing violence to the power of the letters found in the variant orthography are *idem sonans,* as the books express it, and the variance is immaterial. Under the application of this rule, a verdict, "Guilty of *mansluder,*" has been held valid. *State* v. *Smith,* 33 La. Ann. 1414. "*Gilty* of *mrder* in the first degree" was held to mean "Guilty of murder in the first degree." *Walker* v. *State,* 13 Tex. App. 618. A verdict finding "the accused guilty with assault by *sutinge* with intent to murder" was held sufficient to reasonably convey the idea intended, the word "*sutinge*" being *idem sonans* with "shooting." *State* v. *Wilson,* 40 La. Ann. 751, 5 South. 52, 1 L. R. A. 795. "We, the *juror,* find the defendant guilty, and *sess* his punishment *deth,*" is not an invalid verdict. *Krebs* v. *State,* 3 Tex. App. 348. A verdict reading, "We, the jury, find the defendant guilty of an *aggivated* assault," has been held to sufficiently convey the intent to convict the defendant of "aggravated" assault. *Lewallen* v. *State,* (Tex. Cr. App.) 24 S. W. 907. The words "decree"

and "degree" are pronounced so nearly alike that it would require a practiced ear to distinguish them, and this similarity of pronunciation must be held to make the doctrine of *idem sonans* applicable in testing the sufficiency of the verdict upon which the judgment appealed from was based.

It is contended that the court erred in giving·to the jury the following·instruction: "To justify the killing of another in self-defense, it must appear that the danger was so urgent and pressing that in order to save his own life, or to prevent his receiving great bodily harm, the killing of the other was absolutely necessary; and it must appear that the person killed was the assailant, or that the slayer had really and in good faith endeavored to decline further struggle before the mortal blow was given." This was one of several instructions which the court gave pertaining to the right of self-defense. Whether, as an abstract proposition, it correctly states the law of self-defense, has received considerable discussion from the bench. The identical instruction was approved in *People* v. *Nichol,* 34 Cal. 217, and *People* v. *Iams,* 57 Cal. 119, condemned in *People* v. *Flahave,* 58 Cal. 249, and subsequently sustained in *People* v. *Herbert,* 61 Cal. 544; *People* v. *Raten,* 63 Cal. 421; *People* v. *Guidice,* 73 Cal. 228, 15 Pac. 44; *People* v. *Bruggy,* 93 Cal. 483, 29 Pac. 26. The objection urged is that it ignores the right of the defendant to act upon apparent danger; but as was said in *People* v. *Bruggy, supra,* the natural and proper construction to be given it is that, "to justify the killing of another in self-defense, it must appear (to the defendant) that the danger was so urgent, etc., that the killing of the other was absolutely necessary." That the jury was not misled upon the point is manifest from the other instructions given in connection with the foregoing, in which the right of the defendant to act upon appearances was fully and clearly set forth. We refer particularly to the following portions of the court's charge: "The right of self-defense is not limited to cases or instances where actual danger exists. When a person apprehends that another is about to do him great bodily harm, and there is a reasonable ground to believe that the danger is imminent that such design will be accomplished, he may safely act upon such appearances, and even kill his assailant, if this be necessary to avoid the apprehended danger, and the killing will be justifiable, although it may

afterwards turn out that the appearances were false, and that there was in fact neither design to do him serious injury, or danger that it would be done.'' ''In determining whether the defendant acted in necessary self-defense, or in what reasonably appeared to him to be in his necessary self-defense, it is. your duty to look at the transaction from what you believe, from the evidence, was the standpoint of the defendant at the time, and consider the same in the light of the facts and circumstances as you believe they appeared to the defendant at the time, and not from any other standpoint. And it is for the jury to determine from the evidence what were the appearances to the defendant, and what his standpoint was, and in what light he in fact did view the facts and circumstances at the time.'' Taking the instructions upon the question of self-defense as a whole, we think the jury was properly directed as to the law. We find no error in the record, and the judgment of the district court is affirmed.

Sloan, J., and Doan, J., concur.