[Crim. No. 215. First Appellate District.—April 29, 1910.]

## THE PEOPLE, Respondent, v. GEORGE WEBSTER, Appellant.

CRIMINAL LAW—MURDER—VERDICT FOR MANSLAUGHTER—SELF-DEFENSE —SUPPORT OF VERDICT.—Upon a prosecution for murder, where the verdict was for manslaughter, and the evidence shows that after the defendant and the deceased had quarreled in a saloon, the defendant went and armed himself, and on his return to the saloon fired three shots into the body of the deceased while he was unarmed, from which he died, the evidence was sufficient to sustain the verdict of the jury that the killing was unlawful and not in necessary self-defense.

ID.—SELF-DEFENSE—QUESTION FOR JURY.—Whether the killing was done in self-defense was a question peculiarly for the jury; and it is not the province of this court to interfere with their verdict on that question, which is final and conclusive.

ID.—INSTRUCTION—JURY NOT "FULLY SATISFIED" OF GUILT—"REASONABLE DOUBT."—An instruction that, "Laws are made and juries called to investigate cases as much for the protection of the innocent as for the punishment of the guilty. If, therefore, after a careful consideration of all the evidence, you are not fully satisfied that the defendant is guilty, you must say so by your verdict. By so doing the object of the law will be as fully attained as if you rendered a verdict of guilty," is not prejudicial to appellant, because of the use of the words "fully satisfied," instead of the words "satisfied to a moral certainty and beyond a reasonable doubt." Passing the point that the instruction is favorable to the defendant,

where it appears that the law of "reasonable doubt" was often and clearly stated, the jury could not have misunderstood his rights in that regard.

ID.—INSTRUCTION AS TO "CONSEQUENCES OF VOLUNTARY ACT"—PRE-SUMED INTENTION.—The court correctly instructed the jury that "a person must be presumed, and is presumed, to intend to do that which he voluntarily and willfully does in fact do, and must also be presumed to intend all the natural, probable and usual consequences of his own acts; and therefore, if one person assaults another violently with a dangerous weapon, likely to kill, and which does in fact destroy the life of the person assailed, the natural presumption is that such assailant intended death or other great bodily harm. In the absence of evidence to the contrary, this presumption must prevail."

ID.—JUSTIFIABLE HOMICIDE—INACCURATE INSTRUCTION NOT PREJUDICIAL —FULL INSTRUCTIONS AS TO "APPARENT NECESSITY."—An instruction that "to justify homicide on the ground of self-defense, it must appear that the danger was so urgent and pressing that, in order to save the life of the slayer or to prevent his receiving great bodily harm, the killing of the other was absolutely necessary, and it must appear the person killed was the assailant, or that the slayer had really and in good faith endeavored to decline further struggle," though it is inaccurate, and should not have been given, yet the giving of it is not prejudicial, where the right of the defendant to act upon "apparent necessity" was fully and completely recognized in numerous other instructions.

ID.—INSTRUCTIONS AS TO SELF-DEFENSE TOO BROADLY STATED.—*Held,* that requested instructions as to the right of self-defense against an "unlawful attack," and assuming that a person can deliberately persist in the mere exercise of a technical right, when he has reason to know that by so doing he will be placed under the necessity of killing a person in self-defense, were too broadly stated, and were properly refused.

ID.—SIMPLE ASSAULT NOT JUSTIFYING HOMICIDE.—A simple assault would be an "unlawful attack," yet it would not justify a homicide.

ID.—"UNLAWFUL ATTACK" WARRANTING SELF-DEFENSE.—The only "unlawful attack" which would warrant the defendant in killing his assailant is such an attack as would put him, as a reasonable person, in fear of being killed or of receiving great bodily harm; any "unlawful attack" falling short of this would be unavailable as a defense to a charge of homicide.

ID.—PERSISTENCE IN MERE TECHNICAL RIGHT—SELF-DEFENSE NOT PER-MISSIBLE.—A person cannot deliberately persist in the immediate exercise of a mere technical right when he has reason to know that by so doing he will be placed under the necessity of killing a human being in self-defense.

APPEAL from a judgment of the Superior Court of Fresno County, and from an order denying a new trial. George E. Church, Judge.

The facts are stated in the opinion of the court.

L. J. Schino, B. F. Fowler, and Henry Brickley, for Appellant.

U. S. Webb, Attorney General, and J. Charles Jones, for Respondent.

KERRIGAN, J.—Defendant was informed against by the district attorney of the county of Fresno for the crime of murder. He was tried and found guilty of manslaughter. He moved for a new trial, which motion was denied, and he was thereupon sentenced to imprisonment in the state prison for the period of ten years. This is an appeal from the judgment, and from an order denying defendant's motion for a new trial.

The defendant and the deceased on July 18, 1909, quarreled in a saloon in Coalinga, Fresno county. Separately they left the saloon, and within half an hour met again in the same place. They engaged in a second quarrel, as the result of which the defendant (who in the interval between the two quarrels had armed himself with a pistol) shot and killed the deceased.

The defendant claims that the evidence is insufficient to support the verdict of the jury.

The evidence shows that the defendant fired three shots at and into the body of deceased, and that deceased was unarmed at the time. While the defendant and deceased had been engaged in a quarrel a short time before, the facts that defendant went away, armed himself, and of his own volition returned to the saloon where the deceased was, and then and there shot and killed deceased, were sufficient to justify the jury in the inference that the killing was unlawful, and not in necessary self-defense as claimed by defendant. Whether the killing of deceased was done in self-defense was a question peculiarly for the jury, and it is not our province to interfere with their verdict. Under such circumstances the verdict of the jury is final and conclusive. (*People* v. *Emer-*

*son,* 130 Cal. 562, [62 Pac. 1069] ; *People* v. *Stokes,* 11 Cal.
App. 759, [106 Pac. 251].)

The court instructed the jury that "Laws are made and
juries called to investigate cases just as much for the protec-
tion of the innocent as for the punishment of the guilty. If,
therefore, after a careful consideration of all the evidence,
you are not fully satisfied that the defendant is guilty, you
must say so by your verdict. By so doing the object of the
law will be as fully attained as if you were to find a verdict
of guilty."

Defendant complains of this instruction because the words
"fully satisfied" were used, and not the more usual expres-
sion "satisfied to a moral certainty and beyond a reasonable
doubt." It would be difficult to conceive of a case in which
a jury could be "fully satisfied," and at the same time not
be satisfied "to a moral certainty and beyond a reasonable
doubt." Passing the point that on the whole this instruction
is favorable to the defendant, we think the part complained
of could not have injured him, for the defendant's right to
be presumed innocent and to have his guilt established beyond
a reasonable doubt was so often and clearly stated to the
jury, that they must have understood his right in that behalf.
In the case of *People* v. *Flynn,* 73 Cal. 511, 514, [15 Pac.
102, 103], the trial court had employed the word "satisfied"
instead of the words "satisfied beyond a reasonable doubt,"
and it was claimed that the instruction was erroneous. The
court said: "Looking at the whole charge, it will be found
that the words 'beyond a reasonable doubt' are repeated
*fifteen times.* . . . Taking then, the whole charge, and read-
ing, as we must, the different parts of it together, it appears
that the jury were clearly told that they could not find the
defendant guilty of burglary of the first degree, *or at all,*
unless they were satisfied of his guilt beyond a reasonable
doubt. We are unable, therefore, to see how the defendant
could have been prejudiced by the part of the charge objected
to."

The court also instructed the jury as follows: "A person
must be presumed, and is presumed to intend to do that which
he voluntarily and willfully does in fact do, and must also
be presumed to intend all the natural, probable and usual
consequences of his own acts, and therefore, if one person

assails another violently with a dangerous weapon likely to kill, and which does in fact destroy the life of the person assailed, the natural presumption is that such assailant intended death, or other great bodily harm. In the absence of evidence to the contrary, this presumption must prevail.''

Section 1963 of the Code of Civil Procedure enumerates certain disputable presumptions, and in part provides:

"Subd. 2: That an unlawful act was done with an unlawful intent;

"Subd. 3: That a person intends the ordinary consequences of his voluntary act."

Defendant claims that this instruction was at variance with the statute, and in using the word "must" that it in effect deprived the defendant of the benefit of the presumption of innocence. We perceive no sound basis for an objection to this instruction. While the instruction states that a person must be presumed to intend the ordinary consequences of his voluntary act, it also, in compliance with section 1961, Code of Civil Procedure, states that said presumption applies in the absence of evidence to the contrary. That is to say, the defendant must be presumed to intend the natural and usual consequences of his act, unless there is evidence, direct or indirect, to controvert this presumption.

The most serious question in the case arises as to the instruction given by the court at the request of the people upon the subject of what constitutes justifiable homicide. The instruction is as follows: "To justify homicide on the ground of self-defense, it must appear that the danger was so urgent and pressing that, in order to save the life of the slayer, or to prevent his receiving great bodily harm, the killing of the other was absolutely necessary, and it must appear that the person killed was the assailant, or that the slayer had really and in good faith endeavored to decline further struggle before the fatal shooting."

Subdivision 3 of section 197 of the Penal Code provides that homicide is justifiable when committed by a person "in the lawful defense of such person when there is reasonable ground to apprehend a design to commit a felony or to do some great bodily injury, and imminent danger of such design being accomplished." Defendant contends that the court, by the use of the words "absolutely necessary," incor-

porated into the instruction an element not warranted by
the statute; that the jury were told that a defendant in a
criminal case is justified in killing his assailant when the
facts and circumstances make it absolutely necessary, or, in
other words, that he had no right to act upon apparent neces-
sity. To support his position he cites *People* v. *Flahave*, 58
Cal. 249, which, it must be conceded, is squarely in point, and
upholds defendant's position. But the case has not been fol-
lowed. (*People v. Bruggy*, 93 Cal. 476, [29 Pac. 26]; *People*
v. *Westlake*, 62 Cal. 303.) In *People* v. *Cord*, 157 Cal. 562,
[108 Pac. 511], the instruction is upheld. But we are able in
this case, as was the supreme court in the case of *People* v.
*Morine*, 61 Cal. 369, where the same instruction was consid-
ered, to say that other instructions given qualify and explain
the objectionable instruction, and that the charge read as a
whole correctly presents the law on the subject. In that case
there were three instructions which explained the one ques-
tioned. Here there are at least seven, and they were so full
and clear that the jury must have understood that the defend-
ant had a right to act upon appearances. In conclusion, we
feel constrained to say that the instruction is not an accurate
statement of the law and should not have been given.

The court refused to give the following instruction: "In
this case the defendant had a right to go back to the saloon
for the purpose of procuring a drink or for any lawful pur-
pose, even if he expected to be attacked by the deceased on
the way, or after he had entered the place, and if he was for
that purpose in this saloon, he had a right to be there, and
his going did not of itself take away from him the right of
self-defense if unlawfully attacked."

The right of self-defense is too broadly stated in this
instruction. The unlawful attack which would warrant a
defendant in killing his assailant is such an attack as would
put him, as a reasonable person, in fear of being killed or of
receiving great bodily harm; and any unlawful attack falling
short of this would be unavailable as a defense in a charge
of homicide. A simple assault would be an unlawful attack,
yet it would not justify homicide.

There was one other instruction similar to the one just dis-
cussed proffered by the defendant and refused by the court,
but it also stated the rights of the defendant too broadly.

We do not believe, as was assumed in the instruction, that a person can deliberately persist in the immediate exercise of a mere technical right when he has reason to know that by so doing he will be placed under the necessity of killing a human being in self-defense.

We have examined the other instructions complained of, but find them without error.

The judgment and order are affirmed.

Hall, J., and Cooper, P. J., concurred.