[Crim. No. 1546. Third Appellate District.—May 17, 1937.]

THE PEOPLE, Respondent, v. ANTONIO ACOSTA, Appellant.

58

James F. Gaffney and Horace E. Dunning for Appellant.

U. S. Webb, Attorney-General, and Wilmer W. Morse, Deputy Attorney-General, for Respondent.

PLUMMER, J.—The appellant was convicted of the crime of murder in the first degree, with punishment fixed at imprisonment in the state prison for life, upon an information charging that on or about the 8th day of September, 1936, in the county of Sacramento, the appellant wilfully, etc., did kill and murder one Frank Valdez, a human being. From the judgment of conviction and the denial of his motion for new trial, the appellant prosecutes this appeal.

The record shows that the homicide was committed on September 8, 1936, in a saloon known as the "Silver Creek Barroom", in the city and county of Sacramento. The killing took place some time between the hours of 5 and 6 P. M. on the day mentioned.

It appears from the transcript that prior to the fatal affray the appellant and Valdez admitted that after indulging in a few drinks they left the saloon and went to the room occupied by Valdez. It does not appear from the record all that took place in the room just mentioned, but the record does show that the appellant and Valdez engaged in a fist fight, and that some time during the fistic encounter, according to the testimony of the appellant, Valdez stated that he

would "get" him (referring to the defendant). At the conclusion of the fistic encounter the appellant left the room occupied by Valdez, went to where he had an automobile parked and endeavored to start the same. Not succeeding, he went to his own room and armed himself with a revolver. Prior to leaving the room occupied by Valdez, the appellant testified that Valdez went to a bureau in the room, opened a drawer therein, and took therefrom a revolver. After arming himself with a revolver, and after the lapse of something over one hour, the appellant again repaired to the Silver Creek barroom. The testimony introduced by the People shows that immediately upon entering the barroom, the appellant began shooting at Valdez. The autopsy held on the body of Valdez shows that he had been shot five times. On entering the barroom it appears that Valdez said, "Here you are", (referring to the appellant). The testimony further shows that when the appellant entered the barroom, the deceased and others were standing at the bar drinking beer. The testimony of the appellant is to the effect that when he entered the barroom the deceased made a motion indicating that he was about to pull a revolver from somewhere on his person. There is other testimony in the record, however, to the effect that the deceased simply threw up his hands. No other witness other than the appellant testified that the deceased made any motion indicating that he was about to draw a gun. There is ample testimony in the record justifying the jury in coming to the conclusion that the appellant, after the fight with the deceased and after the lapse of an hour, went to the Silver Creek barroom, and upon entering the same, observed the deceased and began shooting at him, without the deceased having made any movement indicating an intention to draw a gun that was upon his person. The deceased, the testimony shows, was armed. After his death it was discovered that a revolver was in his belt on the right side of his person.

 The appellant relies upon the theory of self-defense. A careful scrutiny of the testimony shows that outside of his own testimony there is nothing upon which to base such a contention.

From the testimony in the case the jury was justified in concluding that the appellant's animosity was aroused not only by the fight that he had previously had with the deceased, but also by the quantity of intoxicating liquor that he

had imbibed, and that the appellant's idea of self-defense was that as long as the deceased had threatened to ''get'' him, he, the appellant, in order to protect his own life, had a legal right to shoot the deceased upon sight.

The testimony of the witness introduced on behalf of the appellant only goes to the effect that the deceased had threatened to ''get'' someone, and not that the deceased had been guilty of any overt acts. The character of the witnesses so testifying was a matter for the consideration of the jury, the record showing, on the part of some of them, former convictions of criminal acts amounting to felonies. Taken as a whole, we think the testimony amply justified the verdict returned by the jury.

■ Upon this appeal the appellant relies upon alleged errors on the part of the trial court in giving instructions to the jury, and also in excluding testimony hereinafter referred to. The alleged error in the instructions given by the court is based upon the use of the word ''absolutely'', and is found in two instructions which we here set forth: ''The court instructs the jury that the mere apprehension of danger is insufficient to justify a homicide. The fear, if any, must have been produced by circumstances such as would be sufficient to excite the fears of a reasonable person. The law of self-defense is founded on necessity, and in order to justify the taking of life upon this ground it must not only appear to the slayer, as a reasonable man, that he had reason to believe, and did believe, that he was in danger of his life, or of receiving great bodily harm, but it must also appear to his comprehension as a reasonable man, that to avoid such danger, it was absolutely necessary for him to take the life of the deceased.

''The court further instructs the jury that to justify the killing of another in self-defense, it must appear to the slayer, as a reasonable person, that the danger, if any, was so urgent and pressing that in order to save his own life, or to prevent his receiving great bodily harm, the killing of the other was absolutely necessary. And it must appear that the person killing was the assailant, or, if not the assailant, that the slayer had really and in good faith endeavored to decline further trouble before the fatal blow was struck.''

It appears to be the contention of the appellant that by these instructions the jury was advised that the killing must

have been absolutely necessary, and that they must so find. Such, however, is not the correct interpretation to be given to the language used by the court. Preceding the use of the word ''absolutely'' there is a clear and direct statement that it must so appear to the appellant as a reasonable man, and that he had reason to believe, and did believe, etc., and that it appeared to his comprehension as a reasonable man that to avoid such danger it was absolutely necessary to take the life of the deceased. It is all based upon the reasonable appearance, not upon the absolute fact of such a necessity existing. That the conclusion that the jury could not have understood the instruction otherwise than as herein stated, is reinforced by five instructions given at the request of the defendant, two of which are sufficient to illustrate the language used in all five, such language being to the same effect, to wit:

''The court instructs the jury that the real issue raised in this case by the plea of self-defense is whether, at the time the fatal shot was fired, the defendant believed, and had reasonable grounds to believe, that he was in imminent danger of death or great bodily harm, and it is not necessary that you find the defendant to have been in actual danger at the time he fired; but if you find from the evidence that he was in apparent danger of death or great bodily harm at the time he fired the fatal shot, then his act was justifiable, and in determining whether or not the defendant was in apparent danger you are to view the circumstances at the time as they appeared to him, situated as he was at the time.

''The court instructs the jury that justifiable homicide is the killing of a human being in necessary self-defense, or under circumstances sufficient to excite the fears of a reasonable person, and induce him, as a reasonable person, to believe that in order to save his own life or prevent him from receiving great bodily harm, it was necessary to take the life of the person killed.''

The court further instructed the jury that if the evidence on the question of self-defense was sufficient to raise a reasonable doubt in the minds of the jury as to whether the defendant was justified, then the defendant was entitled to a verdict of acquittal.

A reading of these instructions leaves no doubt in our minds as to the fact that the jury was properly instructed on

the question of self-defense, and that no prejudice resulted from the use of the word "absolutely".

The language used in the case of *People* v. *Leddy,* 95 Cal. App. 659 [273 Pac. 110], where like instructions were under consideration, is applicable here, to wit: "We are of the opinion that the jury, as reasonable men, would understand that whenever a reasonable person is placed in sudden jeopardy of life or limb, the absolute necessity referred to in the instructions complained of exists."

It would serve no useful purpose to quote the language from the opinions referred to in the different cases where like instructions have been approved. We will therefore simply cite the cases: *People* v. *Bruggy,* 93 Cal. 476 [29 Pac. 26]; *People* v. *Webster,* 13 Cal. App. 348 [109 Pac. 637]; *People* v. *Westlake,* 62 Cal. 303; *People* v. *Cord,* 157 Cal. 562 [108 Pac. 511]; *People* v. *Orosco,* 73 Cal. App. 580 [239 Pac. 82]; *People* v. *Leddy,* 95 Cal. App. 659 [273 Pac. 110]. In several of the cases cited reference is made to other instructions, just as were given in the case at bar, which fully explained to the jury the appearances justifying one in taking the life of another, and fully indicating just what was intended by the language used in the two challenged instructions.

█ The appellant further challenges the instruction given on the question of deliberation and premeditation. A reading of the instructions on these questions shows that no error was committed. They are too lengthy to be set forth herein. The fact that in some cases mere abstract statements of the law were given does not carry the conclusion that any prejudice resulted therefrom. (*People* v. *Wolcott,* 137 Cal. App. 355 [30 Pac. (2d) 601]; *People* v. *Robinson,* 107 Cal. App. 211 [290 Pac. 470]; *People* v. *Tapia,* 131 Cal. 647 [63 Pac. 1001].)

· We conclude that the instructions in this case taken as a whole clearly presented to the jury the law which should govern their deliberations and that there is nothing contained in the instructions of which the appellant can reasonably complain, and certainly nothing upon which we could base a decision that prejudicial errors were committed by the trial court in giving any of the instructions in this case.

█ The excluded testimony assigned as prejudicial error relates to an attempt by the appellant to question a witness

as to whether a certain witness who testified on the part of the People was under the influence of intoxicating liquor at the time of the killing. The record shows the following: A witness by the name of Selmos was on the witness stand on behalf of the defendant, and the following questions and answers were given: ''Q. Were you present in court yesterday when a Mr. Olsen testified? A. Yes. Q. Did you see Mr. Olsen on the premises known as 1116 Fourth Street, on the 8th day of September? A. Yes. Q. Was he around there very much? A. No. Q. Was he in and out of there that day? A. Yes. Q. What was his condition for sobriety on that day? (This question was objected to as incompetent, irrelevant and immaterial, and the objection was sustained.)''

It is evident from the foregoing that no foundation was laid for the introduction of any testimony as to the inebriety of the witness Olsen, at the time of the killing. No effort was made, and no showing was made to the court that the appellant could show that the witness Olsen was under the influence of liquor at the time the shooting took place. It is not shown that the witness saw Olsen at or about the time of the fatal affray, or within any time closely connected therewith. While we think testimony may be introduced to show that a witness was laboring under the influence of intoxicating liquor, at the time the occurrences took place to which he has testified the record does not disclose such a situation.

We think the record when carefully considered shows that the appellant, of his malice aforethought, armed himself for the purpose of shooting the deceased upon sight, and that he proceeded to do so without any overt act having been committed by the deceased preceding the time in the barroom when the appellant fired five shots into the body of the deceased.

The order and judgment are therefore affirmed.

Pullen, P. J., and Thompson, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 1, 1937, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 14, 1937.