[Civ. No. 405.   Fifth Dist.   Mar. 23, 1965.]

LEOTA WILSON, Plaintiff and Appellant, v. JOSEPH M. MANDUCA et al., Defendants and Respondents.

Elledge & Cantwell and Donald B. Cantwell for Plaintiff and Appellant.

D. Oliver Germino for Defendants and Respondents.

CONLEY, P. J.—The plaintiff, Leota Wilson, formerly Leota Manduca, sued her ex-husband, Joseph M. Manduca, and also the Wells Fargo Bank American Trust Co., a banking corporation, Joseph W. Carlucci and the County of Merced, to quiet title to fractional lots, the site of the Paris Inn, in the City of Los Banos. Leota Wilson claimed that she and her former husband were the joint owners of the lots and that the other defendants had claims of lien upon the real property.

Mr. Manduca answered saying that he was the sole owner of the land, free and clear of any interest of his former wife; the bank filed a disclaimer; Joseph W. Carlucci claimed a lien on the real property by reason of a security document executed by Mr. Manduca alone, and the County of Merced asserted a lien for hospital services rendered to Mr. Manduca. The cause was tried without a jury; the trial judge ordered judgment that plaintiff take nothing by reason of her action; that Mr. Manduca was the sole owner of the entire title; that Mr. Carlucci had a legitimate lien on the entire property by virtue of a document executed solely by Mr. Manduca; and that the County of Merced similarly had a lien by reason of hospital services rendered to Mr. Manduca, pursuant to a written contract.

It was established that originally the two Manducas were the joint owners of the land by virtue of a deed from a third party. The central factual question is whether or not a purported deed which bore Leota Manduca's name as grantor and her ex-husband's as grantee dated February 6, 1958, and recorded in Merced County on February 11, 1958, was in fact executed by her, or whether it was a forgery.

There was vitally inconsistent evidence at the trial, which, if one side or the other were believed, would justify a finding either way on this essential question, but all of the conflicting evidence could not by any possibility be true. Undoubtedly, perjury was committed by witnesses on one side or the other, and the record would furnish a fertile field for investigation by the District Attorney of Merced County. The trial judge remarked at the close of the case that the question before him was not easy, and that he realized that there would be "two sides to this question after the Court has reached its decision, just as much as there were two sides before." However, the judge said that he believed that the burden of proof was upon the plaintiff and as that party had not completely sustained it, he ordered judgment for the defendants. It is conceivable that a retrial might result in an exactly opposite conclusion by the trier of fact, after hearing the former, and perhaps additional, evidence.

A most convincing witness produced by the plaintiff was Sherwood Morrill, who has had many years of experience as a handwriting expert and who, for some 30 years, has been a criminalist with the State Bureau of Criminal Identification and Investigation. He testified positively that the purported signature on the questioned deed, and a similar signa-

ture on a photostatic copy of the deed by which plaintiff secured a joint interest in the land, were not the handwriting of Leota Wilson, but forgeries. He gave his reasons for this opinion, and the exhibits received in evidence indicate on their face that his evidence is sound. The deed in question was received as plaintiff's exhibit 5, the photostatic copy of the deed to the husband and wife is plaintiff's exhibit 4, and there are plaintiff's exhibits 6 to 12 and defendants' exhibits A and B, which are exemplars of the plaintiff's handwriting.

In collateral support of Mr. Morrill's opinion, there is other evidence which, standing alone, would inevitably lead to the conclusion that the plaintiff did not sign the deed. She denied the execution and acknowledgment and testified that she was not in California at the time the instrument was supposed to have been signed and acknowledged by her but that she was then actually in the State of Arkansas. She also produced two witnesses, Ray Crow and Georgie Johnson, presently residents of California, but who lived at the time in Arkansas, who testified that she was then in that state at that time to their knowledge.

There is, however, contrary evidence which furnishes the background for the trial court's conclusion. Joseph M. Manduca testified that he came to Los Banos, the former residence of the plaintiff and himself, from the State of Arkansas where he had temporarily resided, in the month of January 1958; that at that time his friend, Mr. Carlucci, who was an officer of the bank which held a trust deed on the Los Banos property, advised him that he could not lend him any additional money unless he could get his wife's name on a new note or should acquire full title to the real property. Mr. Manduca then told Mr. Carlucci that his wife had come to Fresno shortly before and that he would secure a deed from her. He testified that he did not know where his wife was staying, but that she called him on the telephone and that he then arranged to meet her on Olive Avenue in Fresno at a street intersection; that, although he was sick, he drove his car to Fresno alone and met his wife on the street; that they then went to a real estate office, or some similar place of business nearby, and that she signed the deed and acknowledged it before a notary public; that neither of them had ever seen the notary before; that he did not inquire where his wife was staying, but returned alone to Los Banos; that the deed was recorded and that Mr. Carlucci took over the loan from

the bank and added to it; that Mr. Manduca also made arrangements with the County of Merced to secure hospital treatment at the county hospital, upon executing a document creating an additional lien upon the property.

Mr. Carlucci gave some testimony, quoted by respondents, tending to show that he expressed his opinion that plaintiff's true signature was on the questioned deed, but a closer study of the transcript, as indicated in the reply brief of appellant, probably shows that the witness was referring to the verity of her exemplar signatures rather than to the correctness of the writing on the face of the deed itself.

The notary, Mr. Marciochi, testified that he had known Mr. Manduca for many years, contrary to Manduca's statement that he had not been acquainted with the notary; however, he did not previously know Mrs. Manduca, the plaintiff, but he positively identified her in the courtroom as the person who did sign and acknowledge the questioned document on February 10, 1958. He admitted that in his function as a notary public his identification of this previously unknown woman did not comply with the requirement of the code that she be identified by sworn testimony (Civ. Code, § 1185), but he said he used her driver's license issued by some unspecified state to check the signature placed by her on the deed.

We cannot reverse the judgment on the facts, because of the well-known appellate rule that if there is substantial evidence to support the findings we cannot interfere with the trial court's factual determination (*Crawford* v. *Southern Pac. Co.,* 3 Cal.2d 427 [45 P.2d 183]; *Estate of Bristol,* 23 Cal.2d 221 [143 P.2d 689]). As demonstrated above, there is evidence which, if believed, would justify the decision in favor of the defendants.

The case of *Herbert* v. *Lankershim,* 9 Cal.2d 409 [71 P.2d 220], however, stands for the general proposition that when there is a close question as to the correctness of the basic conclusion of the trier of fact and there is strong scientific testimony by a handwriting expert opposing the finding, an appellate court should investigate with great particularity the entire record to ascertain whether or not there is any error in the court's rulings which might lead the finder of fact to reach such a conclusion.

█ We do find such an error here and accordingly must reverse the judgment, because of the admission in evidence of testimony relative to alleged drinking habits of the plaintiff. This evidence was objected to and the objection should have

been sustained, because there was no testimony laying a proper foundation for receipt of these statements. Mr. Carlucci was asked about his observation of the drinking habits of the plaintiff; he said that some years before the actual signature of the deed, while he was working in the bank at Los Banos, he had observed that in the mornings the plaintiff never appeared to have indulged in alcoholic liquor, but that in the afternoons he would note, when she came to the bank, that she appeared to have been drinking. However, no foundation for this testimony was established; the evidence was improper, as there was no showing that Leota Wilson had been drinking at any time prior to or contemporaneously with the execution of any of her admitted or alleged signatures. This is true with respect to the writing of her name on the questioned deed and true also with respect to all of the exemplar signatures. There is nothing in the record which would indicate that the plaintiff executed any signature when she could have been influenced in the slightest by any drink of alcoholic liquor, or by any addiction to such a habit. Furthermore, the only expert testimony in the case, that of Mr. Morrill, showed that in his opinion while some gross effect of drinking might sometimes appear in the handwriting of an individual, no use of liquor or addiction to it ever affected the fundamental characteristics of a person's handwriting.

*People* v. *Alfonso,* 77 Cal.App. 377, 380 [246 P. 818], discusses evidence of drinking in a somewhat similar situation as follows:

''The material issue in the case was whether the defendant was under the influence of liquor at the time of the collision. Whether he had or had not drunk liquor at other times during the preceding three years was immaterial to that issue, and a witness is not to be impeached upon an immaterial matter. . . . The admission of the foregoing evidence and the comments of the district attorney thereon were clearly erroneous and highly prejudicial to the rights of the defendant. (*People* v. *Adams,* 76 Cal.App. 178 [244 P. 106], and cases there cited.)

''The judgment and the order are reversed.''

*People* v. *Acosta,* 21 Cal.App.2d 57, 63 [68 P.2d 298], approves the sustaining by the trial court of an objection to testimony that a witness was intoxicated on the day of the events involved in the criminal case, in the absence of further proof that at the time of the wrongful act the defendant was under the influence of liquor: ''It is evident from the foregoing that no foundation was laid for the introduction of any

testimony as to the inebriety of the witness Olsen, at the time of the killing. No effort was made, and no showing was made to the court that the appellant could show that the witness Olsen was under the influence of liquor at the time the shooting took place. . . . While we think testimony may be introduced to show that a witness was laboring under the influence of intoxicating liquor, at the time the occurrences took place to which he has testified the record does not disclose such a situation.''

*C. O. Bashaw Co.* v. *Wood & Stevens, Inc.,* 72 Cal.App. 94, 101 [236 P. 346], shows that whether a case is tried by the court or the jury an error of this nature may be equally injurious, the Supreme Court stating: ''We disapprove of that portion of the opinion [of the Appellate Court] wherein it is said: 'As the trial was before the court and not before a jury, it is patent that immaterial testimony could do no harm,' as not embodying a correct statement of the law on the subject.''

In view of the clash of testimony in the record, it is impossible to know what weight was given the improperly admitted evidence by the court in coming to its conclusion. In *Title Insurance etc. Co.* v. *Ingersoll,* 153 Cal. 1, 9 [94 P. 94], it is said: ''Counsel for defendant evidently thought it was important evidence, or they would not have offered it, and the trial judge evidently considered it material, or he would not have admitted it. If the trial court was led to place more reliance upon the testimony of defendant by reason of such evidence of reputation than he would otherwise have done, *and we cannot say that this was not the result,* plaintiff was clearly prejudiced by the rulings admitting it.'' (Italics added.)

The opinion in *Estate of James,* 124 Cal. 653, 655 [57 P. 578, 1008], comments that it is most difficult to estimate the influence of an error in the admission of testimony on the finder of fact; in that case the court permitted improper evidence that a witness for appellant was ''the author of a highly immoral book,'' and the Supreme Court in reversing the judgment said: ''If improper evidence under objection has been admitted, it is impossible for this court to say how much weight and influence it had in the mind of the trial court in framing its findings of fact. The improperly admitted evidence may have been all-powerful to that effect. As far as this court knows it may have been that particular evidence which turned the scale and lost the case to the appellants.

This must of necessity be the rule wherever improper evidence has been admitted which upon its face tends in any degree to affect the final conclusion of the court.''

It seems probable, in view of the striking conflict of the evidence, and the trial court's statement of its consideration of the proofs on each side, that the improperly admitted evidence received marked consideration by the court and that its weight tilted the scales in favor of the defendants.

The judgment is reversed.

Brown (R. M.), J., and Stone, J., concurred.