Filed 8/16/16  P. v. McGriff CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JOSHUA McGRIFF,<br><br>        Defendant and Appellant. | A142712<br><br>(San Mateo County<br>Super. Ct. No. SC079132A) |

The old adage that nothing good happens after midnight proved true in this case. After spending an uneventful evening at a bar, appellant Joshua McGriff was confronted by another patron at closing time about a missing lighter and cigarettes, leading to a physical altercation.  Though appellant did not start the fight, he finished it by biting off the top of his assailant's ear, partially severing the ear in the process.

Following a bench trial, appellant was convicted of simple mayhem and assault by means of force likely to cause great bodily injury, accompanied by great bodily injury enhancements.  (Pen. Code, §§ 203, 245, subd. (a)(4), 12022.7, subd. (a).)[1]  A prior conviction allegation for purposes of the Three Strikes law and the five-year serious felony enhancement was found true.  (Pen. Code, §§ 667, subd. (a), 1170.12.)  The trial court granted appellant's motion to dismiss the prior conviction for purposes of the Three Strikes law (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*)) and sentenced him to seven years in prison: the two-year lower term on the mayhem count plus five years for the serious felony enhancement, with sentence on the accompanying

---

[1]        Further statutory references are to the Penal Code unless otherwise indicated.

great bodily injury allegation stayed under section 654. (§§ 204, 667, subd. (a), 12022.7, subd. (a).) Sentence on the assault count (the three-year middle term plus a three-year great bodily injury enhancement) was stayed under section 654.

Appellant contends: (1) the judgment must be reversed because the trial court misapplied the law of self-defense; (2) the great bodily injury enhancement attached to the mayhem count should have been stricken rather than stayed because great bodily injury is an element of mayhem; (3) the trial court should have imposed the two-year lower term rather than the three-year middle term for the (stayed) assault count, and should have stricken the great bodily injury allegation attached to that count in the interests of justice; and (4) errors in the abstract of judgment must be corrected. We will order the trial court to strike, rather than stay, the great bodily injury enhancement on the mayhem count, and to correct the abstract of judgment. We otherwise affirm.

FACTS

After appellant and the prosecution waived the right to a jury trial, the following evidence was presented to the court:

At about 11:30 p.m. on June 9, 2013, Ahmed Boutchich went to the Underground Pub in Redwood city, where he consumed several drinks, "four or five max." He was drunk, and the bartender and some of the patrons found his demeanor to be obnoxious and "macho." Appellant, who was also present at the bar, consumed a couple of drinks. He was friendly toward the other patrons and did not appear to be agitated or "macho."

Boutchich was sitting at a table outside the bar near the time of last call, around 1:30 a.m., and went inside to either pay his bill or use the bathroom. He left a pack of cigarettes and a lighter he had purchased in Spain on the table, and when he returned, they were gone.[2] Boutchich asked the other patrons whether they had seen the cigarettes and lighter, but no one said they had. Boutchich yelled about his cigarettes and lighter in an angry, accusatory and hostile way. He asked appellant, who was outside, whether he

---

[2]     Boutchich told a police officer his cell phone was also missing, but he later found it in his pocket.

2

had the missing items and appellant said no. Appellant offered Boutchich a light for a cigarette Boutchich had obtained from someone else, and Boutchich claimed the lighter appellant was holding was his.

Boutchich's accusation led to a heated argument, which became physical. The confrontation ended when appellant bit the top off of Boutchich's ear, an act that detached the ear from the back of Boutchich's head and left it hanging off the side of his face. Doctors who treated Boutchich used skin from his neck to reattach the ear, and he will require more surgery to correct the portion that was bitten off. At trial, appellant did not deny biting Boutchich or dispute the extent of his injury, but claimed he acted in self-defense.

Boutchich and appellant gave different accounts of what happened during the physical altercation. Boutchich testified that appellant pushed him first and he pushed back in self-defense. The pushing continued as other people tried to break up the fight, but Boutchich did not remember any punches being thrown. Appellant held Boutchich in a bear hug and pushed him against the side of the bar, which was next to the door, and appellant released him when Boutchich said the police were coming. Boutchich did not feel any pain during the fight, but after they separated he felt blood on the right side of his head near his ear. He took a taxi to his house, where he discovered his ear was "hanging out" and the top of his ear was missing.

Appellant testified that the verbal argument with Boutchich became physical when Boutchich "poke pushed" him hard in the chest, causing him to stumble backwards. Appellant told Boutchich to calm down and relax and warned him not to touch him like that again. Boutchich started to walk away, but then turned around and lunged with his arms out, putting appellant in a bear hug. Boutchich's arms encircled appellant's body so appellant could not move his arms, and he squeezed appellant tightly while appellant struggled to break free. Appellant started to have trouble breathing because his elbows were being pushed into the sides of his stomach, and he tried unsuccessfully to head butt Boutchich to get away. His lips were brushing up against Boutchich's ear so he bit it, but Boutchich did not let go and squeezed appellant very tightly "to the point I lost all

3

breathing, anything." Appellant was scared and bit down harder on the ear, at which point Boutchich pushed him as hard as he could to the ground. When he hit the ground, appellant realized he had a piece of ear in his mouth. Appellant left the scene accompanied by Larkin O'Toole, a woman he had met in the bar.

Larkin O'Toole, Joseph Helou and Kristin Andrews were part of a group of friends who were at the Underground Pub that evening and saw the fight between Boutchich and appellant. O'Toole had her back turned when the argument became physical, but when she turned around to face them she saw Boutchich holding appellant against the wall, with appellant's chin tilted up as if he were being held by his throat. After the argument ended, O'Toole walked away with appellant, whom she had met for the first time earlier that evening. Appellant seemed worried and said he had bitten someone's ear off and it (the fight) was bad. He had a cut on his bottom lip along with some swelling.

Joseph Helou described appellant and Boutchich as "kind of wrestling" and "locked together" in a bear hug, with no punches thrown. The struggle appeared mutual, in that each appeared to have his arms around the other, and Helou heard appellant demanding an apology from Boutchich. When the two men separated, Boutchich was holding his bleeding ear, and Helou saw a piece of ear on the ground and took a photograph with his cell phone.

Kirsten Andrews saw appellant and Boutchich pushing each other but did not see who pushed first. They seemed equally involved in the fight. At one point, Boutchich grabbed appellant by the throat and pushed him against the wall. Andrews, who is an EMT, tried to separate them just as Boutchich released appellant's throat in order to punch him, and Boutchich mistakenly hit Andrews instead. Andrews testified she had decided to intervene because she believed appellant was in trouble and saw his face changing color when Boutchich grabbed his throat.[3]

---

[3] When she was interviewed by an investigating detective, Andrews did not mention seeing Boutchich's hands on appellant's neck and said she saw appellant punch Boutchich in the face.

Randy Martinez, who was bartending that night and who knew appellant, saw the fight begin when Boutchich pushed appellant following a verbal argument. Martinez saw Kristin Andrews knocked down, after which Boutchich put his arms around appellant in a bear hug while appellant tried to escape the embrace. It appeared to Martinez that appellant's arms were "locked up" and he could not use them to get away. Appellant was squirming and told Boutchich two or three times to let go of him. After the two separated, Martinez saw blood coming down from Boutchich's face and noticed that the top half of his ear appeared to be missing.

The prosecution introduced evidence of prior biting incidents under Evidence Code section 1101, subdivision (b), as relevant to appellant's intent and the malice required for mayhem. The evidence showed that in March 2006, while under a restraining order, appellant bit his former girlfriend Neda K. on the bridge of her nose, inflicting a two-inch scar. In November 2006, he bit her on the shoulder and the cheek during an argument. When interviewed by police, appellant explained he had done so because he wanted Neda to get away from him and he thought biting her would cause her to leave. He did not claim he bit Neda in self-defense, and said he thought it would be better to push or bite a person as opposed to punching or slapping them.

Dr. Terri Haddix, a forensic pathologist, was called by the defense and opined that Boutchich's ear could have been ripped from his head if appellant was gripping the top portion of the ear with his teeth and was pushed away by Boutchich. The injury could also have been caused in other ways, such as by appellant biting the ear and simultaneously pulling his head away. Dr. Haddix testified that an individual experiencing chest compression may feel anxious and progressively short of breath, and the sensation of an inability to breath could be amplified if a physical struggle preceded the chest compression.

The trial court found appellant guilty of mayhem and assault by means of force likely to cause great bodily injury and found true the great bodily injury allegations, specifically rejecting appellant's claim of self-defense. After examining certified court documents from a 2006 conviction of mayhem in Santa Clara County, the court found the

prior conviction allegations under the Three Strikes law and section 667, subdivision (a) to be true.[4]

DISCUSSION

1. *Trial Court's Rejection of Self-Defense Theory*

Appellant contends reversal is required because the trial court's remarks when rendering the verdict demonstrate it misapplied the law of self-defense. First, he points to the court's comment that appellant "used more force than was *absolutely* necessary to defend against the danger," arguing he was entitled to use any force that was *reasonably* necessary to defend against the danger. Second, appellant claims the trial court focused entirely on the right to use force to avoid imminent bodily injury, and ignored case law recognizing that reasonable force may also be used to resist a battery regardless of whether bodily injury is imminent. We find no error by the trial court.

a. <u>Self-Defense—General Principles</u>

To justify an act of self-defense, the defendant must have an honest and reasonable belief that bodily injury is about to be inflicted upon him, and must respond with an amount of force that is reasonable under the circumstances. (*People v. Minifie* (1996) 13 Cal.4th 1055, 1064–1065.) A person also has the right to resist a battery (i.e., an offensive touching) by using force that is reasonable under the circumstances, even if no injury is being inflicted. (*People v. Myers* (1998) 61 Cal.App.4th 328, 335 (*Meyers*).) However, "deadly force or force likely to cause great bodily injury may be used only to repel an attack which is in itself deadly or likely to cause great bodily injury." (*People v. Hardin* (2000) 85 Cal.App.4th 625, 629–630.) Issues relating to the right to self-defense, including whether the force used was excessive, are normally questions of fact to be decided by the trier of fact. (*People v. Clark* (1982) 130 Cal.App.3d 371, 378, disapproved on other grounds in *People v. Blakeley* (2000) 23 Cal.4th 82, 92.)

---

[4] The November 2006 incident involving Neda K. was the basis for the prior conviction.

b. Trial Court's Comments

In rejecting appellant's self-defense claim, the court explained its reasoning as follows: "The issue in this case I think has always been . . . whether the amount of force that was used in biting was excessive and necessary or reasonable, depending upon how you want to analyze the self-defense instruction. . . . I think it's important to look exactly at the exhibit here, Exhibit 3, that shows the significant damage that was done to the victim's ear. [¶] Now I realize that part of that may have been inflicted if the victim had pulled away, which would be logical he would have pulled away from the defendant when the initial bite occurred. And Dr. Haddix I think, did a good job of explaining how that could happen. But the defendant through the initial bite set all of this in motion. And the injury as demonstrated by People's Exhibit 3 is quite extraordinary. And it shows, in my mind, a significant amount of force was used by the defendant when he bit down onto the victim's ear. So then the question is [], was that amount of force reasonable and necessary to defendant against the danger that the defendant perceived under CALCRIM 3470.

"Now, [the prosecutor] has made a very cogent argument in her closing argument that at the time the defendant bit the victim's ear he was not being hit, he was not being punched, he was not being choked. There was no weapon that was being used. There was no knife, there was no gun being displayed. He was in a bear hug. And the victim had, and I believe the defendant's testimony that he was in a bear hug. There was another witness, I think the bartender, Mr. Martinez, supports that. But an earlier witness testified that Mr. McGriff was being choked. Mr. McGriff didn't use any force as he did when he was being choked as he did here. And the common theme that resonates through this use of force by Mr. McGriff came into evidence during the introduction of the prior where he attacked his girlfriend, which I admitted I believe properly under [Evidence Code section] 1101. And these exhibits,[], People's Exhibits 9 and 10, show the significant amount of force that Mr. McGriff used on his prior girlfriend. This is a significant injury which led to a conviction for mayhem as well. So the defendant knew what kind of damage biting could result in.

7

"And Officer Holler testified that in the prior case that Mr. McGriff's motivation was to have his girlfriend get away from him after a struggle, an argument and a physical altercation. And that's exactly the same thing that happened here. [¶] [The prosecutor] I think analyzed the situation correctly in her argument that in this instance the defendant was annoyed, upset with this argument and physical altercation [and] was angry, and did the same thing he did to his girlfriend. He wanted it to end and have the person leave and he used force through biting to accomplish that goal. [¶] And so when you look at these two photographs you can see that this is a very similar motivation and a very similar intent and something that is extremely troubling within Mr. McGriff that he engaged in this behavior. Because his testimony demonstrates a much more even keel gentle individual. But whatever row provokes him in these situations leads to a very significant and tragic result really."

The court continued, "And it is my view of the evidence that the defendant did not act in self defense for either the mayhem or the 245(a)(4) allegations. [¶] For self defense to apply the defendant must reasonably believe that he's in imminent danger of suffering bodily injury and that the immediate use of force was necessary to defend against that danger, and most importantly, and this is where this whole case turns on, the defendant used no more force than was reasonably necessary to defend against that danger. He used more force than was absolutely necessary to defend against the danger, and that's what he's not entitled to do. [¶] And I go back to, the point was made, was very probative of this entire case, he was in a bear hug. There was no physical injury to his chest. There was no witness that saw him gasping for air. There was no witness that saw him being choked, or no witness that saw a weapon emerge that would justify the amount of force that was used by the defendant to defend his actions against the victim."

c. Analysis

"Ordinarily statements made by the trial court as to its reasoning are not reviewable. An exception to this general rule exists when the court's comments unambiguously disclose that its basic ruling embodied or was based on a misunderstanding of the relevant law." (*In re Jerry R.* (1994) 29 Cal.App.4th 1432, 1440

8

(*Jerry R.*), citing *People v. Butcher* (1986) 185 Cal.App.4th 929, 936.)  Appellate courts in criminal cases may consider a "judge's statements *as a whole*, [it] disclose[s] an incorrect rather than a correct concept of the relevant law, 'embodied not merely in 'secondary remarks' but in [the judge's] basic ruling.' " (*People v. Tessman* (2014) 223 Cal.App.4th 1293, 1303 (*Tessman*), quoting *People v. Ortiz* (1964) 61 Cal.2d 249, 253.)

We first consider appellant's claim that the trial court applied an erroneous legal standard when it observed the amount of force used by appellant was not *absolutely* necessary to defend against the danger presented.  Jury instructions couching self-defense in terms of force that is "absolutely necessary" have been approved so long as it is clear from the instructions as a whole that such necessity is based on the reasonable appearance of danger rather than the objective existence of the danger.  (See *People v. Holt* (1944) 25 Cal.2d 59, 63–64; *People v. Acosta* (1937) 21 Cal.App.2d 57, 61.)  "We are of the opinion that the jury as reasonable men would understand that whenever a innocent person is placed in sudden jeopardy of life or limb the absolute necessity referred to in the instructions complained of exists." (*People v. Leddy* (1928) 95 Cal.App. 659, 674, disapproved on other grounds in *People v. Thomas* (1945) 25 Cal.2d 880, 901–902.)

Assuming, however, that the court overstated the standard for measuring the degree of force that may be used in self-defense when it used the words "absolutely necessary," the trial court's comments as a whole do not *unambiguously* show it misunderstood or misapplied the law when reaching its verdict. (*Jerry R.*, *supra*, 29 Cal.App.4th at p. 1440.)  Just before the court observed that appellant had "used more force than was absolutely necessary," it correctly framed the issue as whether "the defendant used no more force than was *reasonably necessary* to defend against that danger." (Emphasis added.)  The court referred specifically to CALCRIM No. 3470, which defines self-defense as existing when "[t]he defendant used no more force than was reasonably necessary to defend against that danger" and additionally states, "The defendant is only entitled to use that amount of force that a reasonable person would believe is necessary in the same situation.  If the defendant used more force than was reasonable, the defendant did not act in lawful [self-defense]." (CALCRIM No. 3470.)

In this context, the court's description of appellant's use of force as "more than was absolutely necessary" was a "secondary remark" not "unambiguously embodied in the trial judge's ruling." (*Tessman*, *supra*, 223 Cal.App.4th at p. 1293.)

Appellant argues that this is a case in which it is impossible to tell whether the court's verdict is based on a legally correct theory of self defense (requiring a "reasonably necessary" amount of force) or a legally incorrect theory (requiring an "absolutely necessary" amount of force). He urges us to apply the rule of *People v. Green* (1980) 27 Cal.3d 1, 69, under which reversal is required when a *jury* has been instructed on both a legally correct and a legally incorrect theory, and it cannot be determined whether the conviction necessarily rested on the legally correct theory. (*People v. Perez* (2005) 35 Cal.4th 1219, 1233.) This rule has no application when reviewing a verdict following a court trial. (*Tessman*, *supra,* 223 Cal.App.4th at p. 1304.) And even if it did, the court's remarks as a whole do not establish that the verdict in this case might have rested on a legally incorrect theory of self defense to the exclusion of a legally correct theory.

We turn next to appellant's complaint that the trial court focused on self defense against bodily injury rather than the use of force to prevent a battery. This theory was not argued below and the trial court cannot be faulted for failing to address it specifically. (See *Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 686 [party may not assert theories on appeal that were not raised in the trial court].) In any event, while a defendant has the right to resist a battery that does not cause bodily injury, he may only use such force as is reasonable under the circumstances. (*Myers*, *supra*, 61 Cal.App.4th at p. 335.) Having concluded appellant's use of force was excessive in the context of defending himself against physical injury, there is no likelihood the court would have found appellant was entitled to bite off the top of Boutchich's ear to resist a battery that did not inflict bodily harm, even if that theory had been presented.

2. *Great Bodily Injury Enhancement on Mayhem Count*

Appellant argues the great bodily injury enhancement on the mayhem count should have been stricken rather than stayed under section 654, because great bodily

injury is an element of mayhem and the enhancement "shall not apply if infliction of great bodily injury is an element of the offense." (§ 12022.7, subd. (g).) The Attorney General agrees and we will direct the trial court to strike the enhancement. (See *People v. Hayes* (2004) 120 Cal.App.4th 796, 798; *People v. Pitts* (1990) 223 Cal.App.3d 1547, 1558–1561.)

3. *Sentence on Assault Count*

The trial court imposed the three-year middle term for appellant's conviction of assault by means of force likely to cause great bodily injury along with a three-year great bodily injury enhancement, and then stayed the sentence on that count under section 654. Appellant contends the trial court abused its discretion by imposing the three-year middle term, rather than the two-year lower term, and by declining to strike the great bodily injury enhancement in the interests of justice. Although recognizing that the term on the stayed count will not affect the length of his sentence in light of the seven-year term imposed on the mayhem count, he argues that *if* the mayhem count is ever reversed, his sentence would be increased to 11 years (three years for the assault count, three years for the great bodily injury enhancement and five-years for the prior serious felony enhancement). The claim has been forfeited by appellant's failure to raise it below. (*People v. Carmony* (2004) 33 Cal.4th 367, 375–376; *People v. Scott* (1994) 9 Cal.4th 331, 353.)

Appellant argues his counsel was ineffective in failing to argue for a lesser term on the stayed assault count. To prevail on this claim, appellant must show both that counsel's representation fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. (*Strickland v. Washington* (1984) 466 U.S. 668, 688, 694.) Taking the second prong first, appellant has failed to establish prejudice. The sentence on the assault count has been stayed and will not affect the length of time appellant spends in custody. The only substantive challenge to appellant's convictions concerned his claim of self defense, which applied to both counts, and it is pure speculation to think the conviction on the mayhem count could someday be reversed

11

while the assault count remained intact. In that unlikely event, the trial court would be entitled to reconsider the sentence on the assault count and could not impose a term in excess of his original sentence. (See *People v. Burns* (1984) 158 Cal.App.3d 1178, 1184.)

        4. *Corrections to Amended Abstract of Judgment*

        The trial court issued an amended abstract of judgment on October 20, 2015, which contained the following errors and omissions: (1) in item 1, it incorrectly indicates appellant was convicted by plea rather than by a court trial; (2) in items 2 and 3, it does not reflect the terms imposed and then stayed for the substantive assault offense and great bodily injury enhancement under count 2; and (3) in item 16, it reflects a sentencing date of July 31, 2015, rather than the correct date of July 31, 2014. The parties agree a corrected abstract must be prepared and filed. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185 [court has inherent power to correct clerical errors].)

## DISPOSITION

        The judgment is modified to strike rather than stay the great bodily injury enhancement attached to count 1 (mayhem). The superior court is directed to prepare an amended abstract of judgment reflecting this modification and correcting the errors and omissions noted in part 4 of our Discussion. The court shall forward a copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation. The judgment is otherwise affirmed.

_____

NEEDHAM, J.

We concur.

_____

JONES, P.J.

_____

SIMONS, J.